UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARL B. JOHNSON,                      ) | |
|                                                         ) | |
|         Petitioner,                           ) | |
|                                                         ) | |
|     vs.                                            ) | Case No. 4:10CV00947 ERW |
|                                                         ) | |
| MICHAEL BOWERSOX,              ) | |
|                                                         ) | |
|         Respondent.                        ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the petition of Carl B. Johnson ("Petitioner") for a writ of habeas corpus under 28 U.S.C. § 2254 [ECF No. 1] and the Report and Recommendation of United States Magistrate Judge Nannette A. Baker, pursuant to 28 U.S.C. § 636(b) [ECF No. 21]. Petitioner has filed Objections to the Report and Recommendation [ECF No. 22]. When a party objects to a magistrate's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objects. *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)).

**I.      BACKGROUND**

In habeas cases, the factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Consequently, the habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

As pertinent for purposes of this discussion, the evidence, viewed in the light most favorable to the jury verdict entered in this matter and with the presumption that the factual findings of the state court are correct, is as follows. On July 21, 2006 Debra (also referred to as "Debbi") Hemmer telephoned her son, Matthew Hemmer, threatening to commit suicide. Also involved in this telephone conversation were Petitioner, who was Debbi Hemmer's live-in

boyfriend, and Mike Nieroda ("Nieroda"), a friend of Matthew Hemmer.  During the course of this call, Petitioner accused Nieroda of wanting to have sex with Debbi Hemmer.  After this call, Matthew Hemmer, Nieroda, and an individual named Dustin Kreher (Kreher) drove to Debbi Hemmer's home.  Matthew Hemmer, who was drunk, entered the home, and began arguing with Petitioner in the kitchen.  Nieroda and Kreher remained just outside the kitchen door, on the patio.

Matthew Hemmer repeatedly challenged Petitioner to step outside and fight him.  At some point, Petitioner retrieved a knife from a drawer, telling Matthew Hemmer that Petitioner had been in jail before, Petitioner was not afraid of him, and he should not talk disrespectfully to Petitioner.  When the argument escalated, Nieroda and Kreher moved inside the kitchen, and Nieroda attempted to grab Matthew Hemmer and pull him back from the encounter.  However, Matthew Hemmer jerked forward, slipped, and fell on Debbi Hemmer, who was standing between him and Petitioner.  Matthew Hemmer then charged at Petitioner.  Petitioner stabbed Matthew Hemmer four times, inflicting wounds in his thigh, back, and neck.  Petitioner also struck Matthew Hemmer on the top of his head.  Petitioner backed into the living room.  Matthew Hemmer ran at him, and they briefly struggled in the living room.  No one was in the living room with the two men.  The wound to Matthew Hemmer's back punctured his lung, which collapsed.  When Matthew Hemmer realized he was bleeding, he returned to the kitchen.  Petitioner left the home soon after this incident.

On July 21, 2006, Petitioner was charged by Indictment for the crimes of assault first degree, and armed criminal action [ECF No. 15-1].  The Indictment charged that Petitioner committed the class A felony of assault in the first degree when he knowingly caused physical injury to Matthew Hemmer by stabbing him, and that Petitioner did so knowingly, with and

2

through the use, assistance, and aid of a dangerous instrument. The State subsequently filed an Information in Lieu of Indictment on April 9, 2007, charging Petitioner, as a persistent offender, with assault in the first degree and armed criminal action.

During Petitioner's trial, through his counsel's opening statement and closing argument, Petitioner argued that he stabbed Matthew Hemmer in self defense. Petitioner presented no evidence. The jury found Petitioner guilty of first-degree assault, in violation of Mo. Rev. Stat. § 565.050, and armed criminal action, in violation of Mo. Rev. Stat. § 571.015. Petitioner was subsequently sentenced to concurrent terms of imprisonment of twenty years for the first-degree assault conviction, and five years for the armed-criminal-action conviction.

Petitioner filed a direct appeal, asserting that the trial court erred in refusing to give his proposed self-defense instruction, which instructed the jury it could find Petitioner acted lawfully in self-defense if Petitioner reasonably believed he was in imminent danger of harm from his assault victim, Matthew Hemmer; or Matthew Hemmer, Nieroda and Kreher. *State v. Johnson*, 254 S.W.3d 916 (Mo. App. E.D. 2008) (appellant's brief, 2008 WL 426356). Petitioner contended the self-defense instruction that was given by the trial court limited the jury to considering he acted lawfully in self-defense if he reasonably believed he was in imminent danger of harm from only Matthew Hemmer; and Petitioner argued that the evidence supported his claim that he could have reasonably believed he was in imminent danger of harm from all three men. The Missouri Court of Appeals concluded that the trial court did not err in refusing Petitioner's proposed self-defense instruction.

Petitioner then filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15 ("post-conviction motion"), claiming that his counsel failed to: 1) subpoena the victim's mother Debbi Hemmer, and Kreher to be cross-examined at his trial; 2) conduct

depositions of Debbi Hemmer, Kreher, and Nieroda; 3) submit an instruction on self-defense of premises; and 4) enter into evidence pictures, letters, and a written statement on a Petition for an Order of Protection that Petitioner alleges Debbi Hemmer sent to him for his defense.  Appointed counsel filed an amended post-conviction motion on Petitioner's behalf, raising only the claim that Petitioner's trial counsel was ineffective when he failed to call Debbi Hemmer and Kreher, and indicating Debbi Hemmer and Kreher would have testified that Petitioner did not assault Matthew Hemmer, and that Matthew Hemmer went after Petitioner.  Petitioner's post-conviction motion was denied without an evidentiary hearing by the trial court.

Petitioner appealed this judgment, asserting that the motion court clearly erred in denying his claim that his defense counsel was ineffective for failing to call Debra Hemmer, whom Petitioner alleges would have testified that Petitioner did not initiate the physical fight with Matthew Hemmer.  The Missouri Court of Appeals affirmed the trial court's judgment.  *Johnson v. State*, 330 S.W.3d 498 (Mo. App. E.D. 2010).  In a Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 84.16(b), the state appellate court noted that, during his sentencing hearing, Petitioner had expressed dissatisfaction with his counsel's performance, stating he wished his counsel had deposed everyone who had been present at the time of the assault, including Debbi Hemmer.  The state appellate court further noted that Petitioner told the sentencing court Debbi Hemmer spat on him in the courtroom, and allegedly attempted to pass notes to jurors during recess.  The court concluded Debbi Hemmer would not have provided Petitioner a viable defense, because her proposed testimony would be cumulative; there was overwhelming evidence at trial that Petitioner did not act in lawful self-defense and that the force he employed was excessive under the circumstances; and the evidence that Debbi Hemmer spat

4

at Movant and allegedly passed notes to the jury refuted Petitioner's claim that her testimony would have aided his defense.

Petitioner filed this petition for federal habeas relief, presenting five primary grounds and submitting several exhibits [ECF Nos. 1, 12, 12-1, 13]. Thereafter, Respondent filed its Response to Petitioner's Petition [ECF No. 15]. Petitioner raised the following grounds for federal habeas corpus relief before Magistrate Judge Nannette Baker: (1) the trial court erred in rejecting the defense's proposed self-defense jury instruction; (2) Petitioner received ineffective assistance of trial and appellate counsel; (3) his post-conviction counsel had a conflict of interest; (4) the trial court erred in not giving an "appearance doctrine" self-defense instruction; and (5) he has newly discovered evidence.

Magistrate Judge Baker found that Petitioner's first and fourth claims for review alleged the trial court erred in rejecting his proposed self-defense jury instruction, in using the instruction given to the jury, and in not giving an "appearance doctrine" self-defense instruction. The magistrate judge noted that the undisputed evidence showed Matthew Hemmer was drunk when he arrived at his mother's house with his friends, Nieroda and Kreher. The magistrate further stated the evidence revealed that, although the two friends eventually entered the house, Nieroda tried to stop the fight between Petitioner and Matthew Hemmer, and Kreher stayed at the door. The magistrate judge found that Petitioner and Matthew Hemmer were the only ones in the house who were physically fighting, and further found that the Missouri Court of Appeals' determination finding no error in the self-defense jury instructions did not result in a decision contrary to, nor involve an unreasonable application of, federal law, or result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings [ECF No. 21 at 6-7].

With the exception of Petitioner's contention that his trial counsel was ineffective for failing to call Debbi Hemmer as a witness, the magistrate judge found Petitioner's remaining claims for ineffective assistance of counsel (claims two and three) were not presented to the Missouri Court of Appeals, and were consequently procedurally defaulted. Concerning the alleged failure to call Debbi Hemmer, the magistrate judge found that Petitioner's recitation of Debbi Hemmer's testimony did not reveal information that would appear to aid Petitioner. Rather, the magistrate judge opined that the information was not relevant, and "would likely have placed [Petitioner] in a negative light" [ECF No. 21 at 9]. Finally, as to Petitioner's claim of actual innocence, the magistrate judge concluded Petitioner had not met the standard of review for such claims, as he provided no new evidence to support his bare, conclusory assertion that he is innocent. The magistrate judge noted Petitioner's "new evidence" consisted of the same arguments made throughout his appeals.

**II.  PETITIONER'S OBJECTIONS PERTAINING TO THE DENIAL OF THE GROUNDS FOR RELIEF IN HIS PETITION**

Petitioner objects to the magistrate judge's: 1) alleged failure to find that Nieroda and Kreher were drinking with Matthew Hemmer on the day of the assault; and 2) finding that "No one was in the living room with Matthew and Johnson." [ECF No. 22 at 1-2]. Petitioner also objects to the magistrate judge's: 1) ruling that no constitutional error existed concerning the self-defense instruction given to the jury; 2) finding that trial counsel was not ineffective for failing to submit into evidence letters, pictures and statements concerning an order of protection obtained by Debbi Hemmer; and 3) denial of his actual innocence claim. In his Objections, Petitioner additionally objects to the report "in its totality (Background)" and requests "another Magistrate's Opinion of Recommendation Report," claiming that the magistrate judge's conclusion on page 15 of the report was biased and constituted a conflict of interest, because the

6

magistrate judge ruled and denied "Petitioner's Recall Mandate on June 30, 2009," while the magistrate was chief judge for the Missouri Court of Appeals.  However, Petitioner also states that he "waived Point Three, Point Five, and Point Six, out of Ground Two in the Original Petition" [ECF No. 22 at 4], consequently the Court will adopt the magistrate judge's findings as to these issues, and will not otherwise formally address them.

### III.     STANDARD OF REVIEW: WRIT OF HABEAS CORPUS

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005).  In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal quotation omitted).  An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004).  Finally, a state court decision may be considered an

7

unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

## IV. DISCUSSION

As an initial matter, the Court finds that, given its independent review of the Petitioner's habeas claims, Petitioner's objection to the report "in its totality (Background)" and request for "another Magistrate's Opinion of Recommendation Report," is moot, and thus will be denied.

Concerning the report's findings, Petitioner specifically objects to the magistrate judge's: 1) alleged failure to find that Nieroda and Kreher were drinking with Matthew Hemmer on the day of the assault; and 2) finding "No one was in the living room with Matthew and Johnson." [ECF No. 22 at 1-2].

The Court will first consider Petitioner's objection to the magistrate's finding concerning the individuals present in the living during the men's fight.  In the Memorandum supplementing its Order affirming the trial court's judgment and sentence imposed, the Missouri Court of Appeals' statement of facts indicated that Nieroda and Kreher initially waited outside Debbi Hemmer's home, stepping inside the kitchen doorway only after the argument between Petitioner and Matthew Hemmer escalated.  The state court found that Nieroda unsuccessfully tried to pull Matthew Hemmer back from his encounter with Petitioner, that he lost sight of Petitioner and Matthew Hemmer when the two men went into the living room, and that he saw that Matthew Hemmer's neck had been cut open when Matthew Hemmer returned to the kitchen.  The state court's factual findings further stated that Kreher stayed near the kitchen door.

A review of the evidence entered in this matter convinces this Court the state court's presumptively correct factual finding, that no one was in the living room with Matthew Hemmer and Petitioner, enjoys support in the record.  During Petitioner's trial, Matthew Henner testified

8

when he returned to the kitchen from the living room, Nieroda was still in the kitchen, but he believed Kreher must have been outside, "because he was not in there when I got there" [ECF No. 15, Resp. Ex. A, DA Trans. at 170]. Nieroda also testified during Petitioner's trial. Nieroda stated he had "kind of froze" on his spot on the kitchen carpet when Debbi Hemmer was knocked down, and he "didn't really see what happened" when the two men's fight "went to the front of the house" [ECF No. 15, Resp. Ex. A, DA Trans. at 238-44]. The Court finds Petitioner has not met his burden of rebutting the presumption of correctness by clear and convincing evidence. In fact, Petitioner's submitted exhibits include the voluntary statement provided by Debbi Hemmer on the day of the incident, which indicates that Debbi Hemmer remained in the kitchen when the men's fight moved to the living room. In this statement, Debbi Hemmer reported Matthew Hemmer and Petitioner "went down the hall" after she had been knocked down, she heard fighting, and "the next [she] knew," Matthew "came running, screaming, 'he stabbed me[.]'" [ECF No. 12-1 at 31]. As more fully discussed below, the Court additionally finds the record contains no evidence that Neiroda or Kreher behaved in a manner that would have led Petitioner to reasonably believed they posed an imminent danger to him.

Consequently, as to Petitioner's objection regarding the magistrate's failure to find Nieroda and Kreher were drinking with Matthew Hemmer on the day of the assault, the Court finds that whether the three men were drinking together is irrelevant to a determination of Petitioner's right to have the jury instructed to consider any threat posed by Nieroda's and Kreher's presence.

Petitioner's petition alleges violations of his rights to due process, a fair trial, and a properly instructed jury as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution [ECF No. 1]. In his Objections, Petitioner argues that the trial court erred in

9

instructing the jury on self-defense, because the given instruction limited the jury to considering whether Petitioner acted lawfully in self-defense if he reasonably believed he was in imminent danger of harm from only Matthew Hemmer.  Petitioner claims the evidence supported that Petitioner reasonably could have believed he was in imminent danger of harm from Matthew Hemmer, or Hemmer, Nieroda, and Kreher.

>As pertinent, Petitioner's proposed instruction provided:
>
>>On the issue of self-defense in this case, you are instructed as follows:
>>
>>If the defendant reasonably believed he was in imminent danger of harm from the acts of Matthew Hemmer, Michael Nieroda, and Dustin Kreher and the defendant used only such force as reasonably appeared to be necessary to defend himself, then he acted in lawful self-defense.
>>
>>And if the defendant reasonably believed he was in imminent danger of death or serious physical injury from the acts of Matthew Hemmer or from Matthew Hemmer, Michael Nieroda, and Dustin Kreher and he reasonably believed that the use of deadly force was necessary to defend himself, then he acted in lawful self-defense.

[ECF Nos.  12-1 at 1; 15, Resp. Ex. B at 41].

The instruction given to the jury by the trial court at the conclusion of Petitioner's trial did not include the names of Nieroda and Kreher.  In its Memorandum in Support of its Order affirming Petitioner's conviction and sentence, the Missouri Court of Appeals noted that, when Petitioner proposed his self-defense instruction during the instruction conference, the trial court rejected the proposed instruction on the ground there was no evidence of Nieroda or Kreher making any threat toward Petitioner [ECF No. 15, Resp. Ex. E, DA Order & Mem.].  After reviewing the record, the state appellate court agreed with the trial court's ruling, because no evidence established or even implied that the two men behaved in a manner that would have led Petitioner reasonably to believe they posed an imminent danger to him.

10

When determining if habeas relief should be granted, a federal court's review is limited to examining whether the conviction violated United States law." *Crump v. Caspari*, 116 F.3d 326, 327 (8th Cir. 1997). "Determinations of state law by the Missouri Court of Appeals are binding." *Id.* A defendant has a due process right to a self-defense instruction if the evidence satisfies the requirements of the state's law on self-defense. *Lannert v. Jones*, 321 F,3d 747, 754 (8th Cir. 2003). To warrant a self-defense instruction under Missouri law, a defendant must show by substantial evidence that he reasonably believed force was necessary to defend himself from the use of, or imminent use of, unlawful force by another person. *Crump*, 116 F.3d at 327; Mo. Rev. Stat. § 563.031.

Here, the jury was given a self-defense instruction, which directed the jury to consider whether Petitioner believed he was in imminent danger of harm from Matthew Hemmer. The jury was also instructed to consider all of the evidence. The trial court's refusal of Petitioner's proffered self-defense instruction did not violate Petitioner's constitutional rights because the evidence shows that neither Nieroda nor Kreher behaved in a manner that would have led Petitioner reasonably to believe either man posed an imminent danger to him. The undisputed evidence showed that Matthew Hemmer came to his mother's house drunk with these two friends. The evidence also showed that, although the two men eventually came into the house, Nieroda actually tried to stop the fight, and Kreher stayed at the door after entering the house. Matthew Hemmer and Petitioner were the only individuals in the house who were physically fighting. Because the record lacks evidence indicating that Nieroda and Kreher acted together with Matthew Hemmer in manner that could have caused Petitioner reasonably to believe that they posed an imminent danger of harm, the trial court did not err in refusing Petitioner's

11

proposed self-defense instruction. *See Lannert*, 321 F.3d at 754. Because no constitutional violation occurred in this case, the Court will deny habeas relief on this claim.

Petitioner also objects to the magistrate judge's finding that trial counsel was not ineffective for failing to submit into evidence letters, pictures and statements concerning an order of protection obtained against him by Debbi Hemmer. Petitioner claims this evidence would show that the claim of abuse was false, and "that she went into a jealous rage simply because Petitioner was leaving her." In this ineffective-assistance-of-counsel claim, Petitioner contends the outcome of his trial would have been different if this evidence had been presented, because Debbi Hemmer would have had to explain statements she wrote on an order of protection filed one week after stabbing, including accusations of abuse and her threatened suicide. Petitioner further contends this evidence shows that Debbi Hemmer conspired to commit harm to him, and that she "set-up" Petitioner, using her son and his friends. He claims Debbi Hemmer stated, in the order of protection, that Matthew Hemmer and his friends came to her residence to confront Petitioner, and argues this statement contradicts the State's theory that Matthew Hemmer and his friends came to check on Debbi Hemmer, and that the friends tried to stop Matthew Hemmer from running toward Petitioner . Petitioner argues that this evidence supports the giving of his proposed self-defense instruction.

To obtain relief based on ineffective assistance of trial counsel, a petitioner must establish: 1) that trial counsel's performance fell below an objective standard of reasonableness; and 2) that this deficient performance prejudiced the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A court reviewing an ineffective-assistance-of-counsel claim is not required to address both the prejudice and performance components of the *Strickland* inquiry if a petitioner makes an insufficient showing on one component. *Id.* at 697. A

petitioner establishes prejudice by demonstrating that, but for counsel's poor performance, there is a reasonable probability the outcome of the trial would have been different. *Id.* at 694. The "performance" component requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. After a petitioner identifies the specific acts or omissions of counsel that are alleged to have fallen below this objective standard, the Court must then determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

  This Court finds that the evidence Petitioner claims his trial counsel should have submitted would not have aided his defense. The information concerning Petitioner's volatile relationship with Debbi Hemmer, and the fact that she obtained an order of protection against him were not relevant, and would likely have caused the jurors to perceive him in a negative light. Although unlikely, Debbi Hemmer may have testified that she manipulated her son into confronting Petitioner, and that Matthew Hemmer was the initial aggressor. However, the evidence adduced at trial shows that Petitioner escalated the fight between him and Matthew Hemmer by introducing, and using, a knife. The Court finds that trial counsel was not ineffective for failing to submit into evidence letters, pictures and statements concerning an order of protection obtained against him by Debbi Hemmer. Although Petitioner posed his third ground for relief to contend his post-conviction counsel exercised vexatious intent to sabotage his claim with a conflict of interest, his allegation charges that his post-conviction counsel failed to include trial counsel's failure to conduct deposition of Debbi Hemmer, Kreher, and Nieroda, to submit

13

instructions on self-defense of premise, and to enter into evidence the pictures and letters just discussed. Appellate counsel is not required to pursue theories that are clearly no meritorious. The Court finds that appellate counsel's conduct did not fall below the standard of professional reasonableness and that the outcome would not have been different if appellate counsel would have raised theses issues.

Petitioner additionally objects to the magistrate judge's finding that he failed to meet the standard for review based on actual innocence. Petitioner pleads actual innocence, and asserts that he has newly discovered evidence. Under the fundamental miscarriage of justice standard, Petitioner may show he is actually innocent by providing "new, reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Few petitions are within the narrow class of cases implicating a fundamental miscarriage of justice." *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997).

Petitioner has not met the standard for review based on actual innocence. He has not provided any new evidence and a bare, conclusory assertion that he is innocent is not enough. *Id*. at 1352-53. The "new" evidence cited by Petitioner is a repeat of the same arguments he made throughout his appeals: that Debbi Hemmer, in a jealous lover's rage, manipulated Matthew Hemmer into attacking Petitioner, and that Petitioner feared attack by Matthew Hemmer, Nieroda, and Kreher. These allegations, having been made before, do not comprise new evidence and do not satisfy the demanding standard for presenting an actual innocence claim.

The Court will deny Petitioner's 28 U.S.C. § 2254 petition [ECF No. 1].

**V.     CERTIFICATE OF APPEALABILITY**

A certificate of appealability may only be issued when "'the applicant has made a substantial showing of the denial of a constitutional right.'" *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006). Petitioner has made no such showing. Furthermore, the Court does not believe that reasonable jurists might find the Court's decision debatable or wrong, for purposes of issuing a certificate of appealability under 28 U.S.C. § 2253(c)(1)(A). *Slack*, 529 U.S. at 483-84. The Court will not issue a certificate of appealability as to any claim raised in the Petition.

**VI.    CONCLUSION**

The Court has reviewed those portions of Magistrate Judge Baker's Report and Recommendation to which Petitioner filed objections, and concludes that his objections are without merit. The Court hereby sustains, adopts, and incorporates herein the Magistrate Judge's Report and Recommendation [ECF No. 46], as supplemented by this Court's independent analysis.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Carl B. Johnson's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued.

Dated this   26th   day of August, 2013.

*E. Richard Webber* (signature)
_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE